Case number 12-3491 Owner Operator Independent Drivers Association, et al. v. Comerica Bank Argument not to exceed 15 minutes per side. Ms. Brose, you may proceed for the appellate. Good morning. May it please the court. My name is Alicia Brose of the law firm Obori Cedar C. Markey's and I represent Comerica Bank in this matter. I would like to reserve three minutes for rebuttal. Here with me is Comerica Representative Susan Nystrom. Comerica asks that the decision of the lower court be reversed and the case be remanded for three independent reasons. First, the district court improperly applied the Interstate Commerce Commission Termination Act retroactively. Second, the district court never required the owner operators to prove their damages against Comerica. And third, the statute of limitations has run. Turning to my first point, the district court erred when it applied the ICCTA that allowed truck drivers to pursue private rights of action for violations of the truth in leasing regulations. The district court in its order granting summary judgment in this case found that the ICCTA could be applied retroactively against Comerica. The district court found that in the face of an argument by Comerica that it could not. In The issue was raised in a summary judgment in front of the district court in this case. That's correct. In the district court's order on summary judgment, he ruled that the ICCTA could be applied retroactively. And that's document number 64 where he made that ruling in this particular case. Did he? I had some impression that the district court had made it on some general ruling with regard to trust rather than on that specific statute. Actually, Your Honor, he made it on that specific statute. We raised that precise issue. And we raised the point that the only circuit courts in this nation, both the Eighth Circuit and the Ninth Circuit, have held that the ICCTA cannot be applied retroactively. But wasn't that issue before the Sixth Circuit on the earlier appeal? It was not, Your Honor. Well, then didn't you waive that argument? No, Your Honor. We could not have raised that issue on the last appeal. On the last appeal, we won. The judgment against us was zero dollars. Well, why couldn't you have taken a cross appeal if the district judge had made an adverse finding to you in the earlier ruling? Why couldn't you take a cross appeal? Under Sixth Circuit law, that cross appeal would have been prohibited. We are victorious. The judgment was zero dollars. The only issues we could have raised were those were in affirmance of the prior district court judgment. Well, you can always raise some additional evidence to support in affirmance, but if there's been a determination of rights, can you sit back and then try to come in later and expand your rights on a second appeal? Actually, Your Honor, that would not have expanded our rights. That would have diminished our rights. On the first appeal, we owed zero dollars. The judgment was in our favor. The ICCTA would only have had a future judgment if there were one awarded against us, which the court had done, and the amount of that judgment. Well, didn't the judge clearly say that you were liable for five million, but that you were not liable because you would have gone against the different trust account? The district court judge ruled on the second time around that we were liable for 5.5 million, but not on the first appeal to this court. The United States Supreme Court in Hughes Aircraft clearly stated that when a statute passed by Congress that is silent as to its retroactive application expands the rights of plaintiffs to bring a suit, then the new statute cannot be applied retroactively. Because of the district court's retroactive application of the ICCTA, more than 1,000 truck drivers were able to bring a suit against Comerica that would not have been able to do so had the statute not been applied retroactively. On this application, I'm looking a little bit closer at the district court's earlier decision. He said, but whether the ICCTA can be applied retroactively to the pre-'96 leases is not even an issue in this case. Plaintiffs are not suing Comerica under the ICCTA. Plaintiffs bring an action under federal common law and trust. The damage amount, Your Honor, embedded in that decision about how much damage there were is whether the ICCTA was applied retroactively. Embedded in that $5.5 million is a retroactive application of the ICCTA. He wasn't relying upon the ICCTA and he was instead relying upon a notion of common law and trust? That was for the basis for their action, but not the basis for the damage award. But the district court judge discounted that he was making the finding under ICCTA, didn't he? Correct, Your Honor, for the cause of action that was brought, but the damage, the underlying $5.5 million of damage award embedded in that award is a retroactive application of the ICCTA. If you look at the spreadsheet that was provided by the court, it includes contracts that were entered into between January 1, 1996, and they only can be included if the ICCTA is applied retroactively. So doesn't the ICCTA point hinge on whether you did or did not have a duty to cross appeal on the damages question? I don't believe so, Your Honor. I believe there are two independent issues. But I thought you just told us that the ICCTA affected the damages. It did, Your Honor. That's correct. So if we were to say you can't raise any damages issue now because you shouldn't, let's say hypothetically, you said you shouldn't cross appeal, then you would be stuck with the $5 million of damages if we said you waived your right to appeal. Not necessarily, Your Honor, because the ICCTA is an independent legal determination that was not reviewed by this court because it was not made in the terms of our first appeal. You have to recall that this is our first time we won, and this time in this court we lost. All the cases that Braven's Waiver argued before this court that owner-operators have presented are two subsequent losers. And that's not what we have here. We're flipping sides. Well, let me take you back because I think you've misrepresented the record. I asked you specifically whether the district court had made a finding that you would have been liable for 5.5 in the first opinion that was appealed. And I thought you said five minutes ago that the district court never made that finding. No, Your Honor. On the first appeal, the judgment against us was $0. Well, I know what the judgment was, but the district court made a specific finding that you were liable for 5.5, excepting for this exception that the trust, that the escrow fund was not there. I disagree with that representation, Your Honor. Well, look at page 1945 of the record. The district court there says the entire amount of the trust property was determined in the article litigation v. 5.5, which was the amount of the maintenance escrows plus interest. If the court determines that the maintenance escrows were included in an Arctic account with Comercia, and if this court determines that Comercia withdrew the funds from the account in breach of the trust, then Comercia would be liable for the entire amount of the trust property. But the court found that there was no trust at that time. We won. There was a $0 judgment against us. Because any one of the accounts was subject to the trust. I believe the Sixth Circuit was the first court to actually find that, Your Honor. Well, why didn't you appeal? I guess it's the question. There was a fairly specific finding that 5.5 was the amount of damages. And you never filed a cross-appeal for that. Because at the time, Your Honor, the amount of damages against us was zero, and there were no findings as to the amount of damages to be awarded if, after remand, the judgments were reversed and there was an award against us. At the time, we voted nothing. We won that district court's rejection. Oh, you voted nothing. It's simply because of the fact that you said there wasn't any money in the account that was subject to the trust. That's the only reason the district court found that we had a victorious appeal. The court of appeals said that another trust was also subject to it and that you had withdrawn funds from the other trust. Actually, the Sixth Circuit, I believe, found that there was a trust and that the trust attached upon a deposit of the account's receivables into Comercia's account and that we weren't a bona fide purchaser, and they disagreed with the district court's reason for granting us some rejudgment. So what is your best case from either the Sixth Circuit, in a published opinion, or the Supreme Court, to say that you did not have a duty to cross-appeal on the damages question? I believe that Britt v. Schmidt, there's a footnote that says that such a cross-appeal would be worse than unnecessary, I think is one of our best cases. The owner-operators and we were not able to locate a single case where, if you were successful, you had to raise any other issues other than arguments and affirmance of the district court's decision. Otherwise, every person who was victorious on summary judgment would be appealing every single issue in the case. On the out chance they were reversed and remanded to the district court, you'd have advisory opinions, you'd have multiple cross-appeals, you'd have a cross-appeal of every single case that came before this court. That's why the law is very clear, and that the only thing you're allowed to do, if you're victorious in the district court, is raise additional arguments and affirmance of the district court's decision, which is what we did. Well, there's this law of the case doctrine, that the district court in this case made a specific finding that you were liable for 5-5, and that would control Whitman. I disagree, Your Honor, that the district court made such a finding. First of all, the $5.5 million was based upon an inclusive settlement agreement between the owner-operators of Arctic. That $5.5 million has never seen the light of day. It has never been proven in court. Why didn't you appeal it then? Because there was no judgment against us at that time. There wasn't any judgment, but there had been a finding against you. Actually, the district court awarded it in our favor. The judgment was in our favor. The judgment was in your favor, but he made a specific finding that you wouldn't have been liable for 5-5, except for the fact that he thought that the trust only applied to one account, and later the court of appeals said that trust applied to the account where you'd been withdrawing money. Right, but the district court also had before it the issues of whether we were voted by a purchaser in their first decision. The district court never raised that. That issue was only decided by the Sixth Circuit, and only after that decision was the case remanded for a full evidentiary hearing, as to the amount of damages, which still had not been proven against us. Let me ask you another question, because you knew before the settlement. You were fully aware of what was going on and that the owner-operators were going to try to attach you for that money. Did you raise an objection in the bankruptcy court to the settlement amount? Actually, Your Honor, the objection would have been in the district court because it was an adversary proceeding. Did you raise an objection? We did not at that time, Your Honor, because we were not required to do so, and there was still a lawsuit pending against us, and that lawsuit had to be proved as a matter of due process, as a matter of constitutional due process. That lawsuit pending against us, they had to prove every single element of their claim against us, including the amount of damages. America's due process rights have been violated because that $5.5 million has never been spent, based upon findings of fact, cross-examination. But you had every right to raise those. If you sit on your hands, I mean, who are you to complain? At the time. You didn't. I mean, you've made a tactical decision that it wasn't worth the cross-appeal, but, I mean, why? You could have raised the challenge to the settlement amount, and you did raise the challenge to the district court that the $5.5 million shouldn't apply against you. I don't believe it was a tactical decision. I believe it was the correct legal decision, Your Honor. Sixth Circuit case law prohibits cross-appeals in these circumstances before you want a summary judgment before the district court. And your case, I'm sorry to go back to this, but you said it was something like briefed? Versus Schmidt. And I don't see it cited in your brief. You do not. I believe it's in our reply brief. What's the thing you do? Sure. I don't have it before me, but when I come back up, I will have those cases for you. Thank you. Also, we ask that the district court's opinion be reversed because the statute of limitations has run against Comerica Bank. This court specifically found on remand that there was a factual issue with respect to whether the owner-operators exercised reasonable diligence in trying to locate their claim against Comerica. That was a factual decision the district court had determined. The district court, because the owner-operators destroyed every document that they had in their file with respect to this lawsuit, reached a factual inference that as of September 29, 1997, the district court, the owner-operators, had a duty to look for those trust funds. But the only evidence on the record is that the owner-operators made a tactical decision not to look for the money. They were sophisticated counsel, they were engaged in litigation, and they decided that it was more important to establish a right of action than to try to find the trust funds. You chose a non-jury trial, right? Yes, Your Honor. And so the standard you'd have to meet was what? You're going to have to meet an extremely high standard that overturned the fact finder as to when a cause of action occurs. Actually, Your Honor, we don't disagree with any of the factional findings made by the district court. We completely agree with the factional findings that were made, but we disagree with those applications of the facts to the law. But the test here is whether a reasonable person would have known of the need to conduct further investigation or to bring the lawsuits. I believe, Your Honor, that the test is whether they subjected a reasonable search. The reasonable search. And that was the question. And the only record evidence here is that the owner-operators affirmatively decided not to look. They weren't worried about this issue, and they weren't deciding. They were not even focused on trying to do it. They just threw up their hands and said, We're not looking for a cause of action. May I see your red light? Thank you, Your Honor. Good morning. May I please report my name is Joyce Mayers from the law firm, I represent the plaintiffs' appellees in this matter. Let me first address the issue of the application of the ICC Termination Act to this matter. The district court correctly found that the ICC Termination Act has no application whatsoever to this action. The ICC Termination Act applies to motor carriers. Comerica is not a motor carrier. And there was nothing about the grant of a private right of action under the ICTA that affects the plaintiff's property rights and their trust property, which was the issue litigated against Comerica. The district court correctly found that the ICC Termination Act had no application. In fact, this court found that the property rights defined by the Truth in Leasing Regulations 37612K were enacted in 1979. Therefore, plaintiff's property rights protected by the trust created by those regulations went back to 1979, not to 1996 or 1993 when the recovery period in the Arctic litigation began. So Comerica's statement that 1,000 drivers brought suit or were allowed to bring suit because the judge applied the ICTA retroactively to this matter is just simply not correct. Number one, the judge didn't apply the ICTA retroactively. Number two, the suit against Comerica was not a class action. The suit against Comerica was to collect trust property wrongfully transferred, and that was a single claim against Comerica, not a class action. I believe the issue in this case can be, all the issues in this case, frankly, can be completely resolved simply by reading the opinion of the first panel. The district court correctly ruled that the panel in Arctic Express 1 affirmed its findings as to the accuracy of the fully litigated issue of damages in the amount of $5,583,084. But the issue of damages wasn't raised before the prior Sixth Circuit panel was. It was, in fact, raised before the prior Sixth Circuit panel. Who raised it? Comerica raised the issue of damages by, granted, in footnotes and not in a fully developed argument. But, in fact, Comerica raised the ICTA argument, which is only a damages argument. I'm asking about the damages. The district court, early on, before the first appeals in the Sixth Circuit, said there was a $5 million damage amount that Comerica would be liable for, but for the trust point. Sixth Circuit reverses on the trust point and sends the case back for a statute of limitations consideration of the district court. So why shouldn't the district court, at that point, have been able to reconsider the damages amount? Why shouldn't we be able to consider the damages amount? Because— When you answer that, when you answer that, could you include in it the point that we're told that that resulted from a stipulation and was never adjudicated? Well, it's not completely correct that the damages weren't adjudicated in the district court. The Arctic litigation was a long proceeding, and the damages were contested throughout the proceedings. But Comerica wasn't a party to that, right? Comerica was not a party to that, but Comerica had ample opportunity to weigh in on the damages. Comerica was sued six months before the Arctic settlement, and it was clear from the adversary complaint originally filed that the plaintiffs were going to pursue Comerica for the full amount of whatever damages were awarded through the Arctic litigation. And the reason for that was— The prospect of damage, the prospect. You're saying that's when they should have acted because there was a prospect, not a judgment, not even a claim. The prospect of a claim. I'm saying that it was clear that the plaintiffs were going to go after Comerica based on a trust theory, and that the maintenance efforts on this issue was fully litigated. Well, you're dropping the point that Comerica was not a party, so it was fully litigated in the Arctic against whoever was parties in the Arctic. But Comerica was not a party. Are you saying that Comerica had to intervene in the Arctic case? Comerica could have intervened. Comerica could have shown up at the settlement conference and objected to the settlement and the provisions of the reorganization plan and the bankruptcy proceeding. And they were a party in the bankruptcy proceeding. Who else could have shown up when you talk about who could have shown up? They had notice of the fairness hearing. They had notice of the settlement negotiations. They had notice that, in fact, the plaintiffs had already filed suit asking that the amount settled on in the Arctic litigation be awarded to the plaintiffs. They had notice that the plaintiffs were alleging that that was trust funds. They had notice that the plaintiffs were alleging that that trust property had been wrongfully transferred to Comerica. And that notice is happening in—correct me if I'm wrong, please. That notice is happening in the case that your clients filed against Comerica that is now in front of us. Yes, there was a motion to dismiss pending. The motion to dismiss was— In the case before us, down the line earlier. Yes, yes. In the adversary proceeding, which was ultimately withdrawn to the district court and became the litigation against Comerica, there were motions filed where Comerica received actual notice of the settlement proceedings and actual notice—well, the complaint itself gave actual notice that plaintiffs intended to pursue Comerica. So why couldn't Comerica raise issues having to do with damages in front of the district court hearing? They could have raised issues, and in fact, they did raise the issue of damages. The district court finds that they're liable for $5 million of damages, but the district court said there was no trust, and therefore it's a zero award against Comerica, right? The district court made specific findings. The district court considered every argument raised by Comerica on this second appeal was raised in the context of the motion for summary judgment in 2009. The district judge considered every one of those arguments, and after considering those arguments, came to the conclusion that if it determined that the maintenance escrows were deposited in an account with Comerica, an Arctic account with Comerica, and if those funds were transferred to Comerica in breach of trust, that Comerica would be liable for the entire amount of the trust property, the trust property having been determined in the Comerica litigation based on Comerica's own conduct to be $5,583,000. So that was part of the district court's original determination? On summary judgment. And then there was the other part of the district court's judgment having to do with the trust, and you lost on that part. You appealed to the Sixth Circuit, and the Sixth Circuit said that you win on the trust part. Yes. And didn't say anything with respect to damages, right? Well, no. Because that wasn't appealed by anybody. Correct me if I'm wrong, because you want to get it right. Yes. So my understanding is that the key to this case is, was there a duty on the part of Comerica to raise the issue of damages on the first appeal to the Sixth Circuit? Yes. Through some vehicle, which could be a cross appeal, or maybe you could come up with another vehicle. And the question is, what cases would you rely on to say that Comerica had its chance and lost it in the prior appeal? Well, I think the long line of this court's decision is having to do with the mandate rule. And I would like to go back and review the mandate, because I believe that the mandate affirmed the district court's finding that the $5.5 million figure was, in fact, the trust property, that this court ultimately determined had to be disgorged to the plaintiffs. So was the mandate limited to the statute limitations issue? I believe that it was a limited mandate and that the only issue that was remanded to the district court for trial was a question of fact with respect to plaintiffs' diligence in discovering their claim against Comerica. So the judgment that you would say about Comerica or the words would be, if, blah, blah, blah, Comerica would be liable, those are the judicial words that you use to say that they would be foreclosed. If I can – I believe I'm answering the question by saying this, that the district court's 2009 summary judgment finding with respect to damages went, in fact, to the central issue that was appealed on the first appeal. And that was the nature of plaintiffs' property interests in their maintenance escrow funds and the transfer of that trust property to Comerica, the wrongful transfer in breach of trust. And so the district court went through Comerica's arguments related to why it could not be held responsible for the finding with respect to that piece of trust property. But there was never been any inquiry with respect to the dollar amount, as I understand it. I believe that there was an inquiry with respect to the dollar amount. There was no inquiry from the stipulation in the earlier litigation that did not include Comerica. Well, and again, then it's necessary to go back to the Arctic litigation and understand the hotly contested issue with respect to damages and how the damages – Comerica was not a party. Am I correct? Comerica was not a party there. But Comerica had the opportunity, even if you put aside the idea that they should have come into the Arctic litigation and challenged damages there, they had every opportunity to raise the specific issue with respect to the penny-by-penny amount that was awarded to plaintiffs. They could have raised that kind of argument somewhere in the district court. They chose instead to raise the issue of the retroactivity of IPTA. And they chose to argue, which they did in the district court, that they could not be held responsible for the amount that was found in Arctic. So that issue was actually litigated on summary judgment. And in fact, going back to a previous question, the fact that they raised the issue of whether they could be held responsible for recovering the amount, the piece of property that was awarded in that location, that was raised on the summary judgment. And because it went to one of the central issues, it would have been an alternate basis to affirm the grant of summary judgment because had the Sixth Circuit reversed and said, no, Comerica was never a party there, and they cannot be held responsible for these funds, and therefore the claims are dismissed because they can't be held responsible for the Arctic judgment. That was an issue raised and litigated in the district court. Comerica raised that issue on their first motion for summary judgment in 2006, and the district court rejected that argument in 2006. It wasn't raised again until the 2009 summary judgment, and Comerica raised the precise argument again in the 2009 summary judgment, and that was part of the district judge's analysis coming to the conclusion. Did they make any argument on the first appeal dealing with the amount of damages? I'm sorry, could you repeat that? Did they raise any question in the first appeal about the amount? They raised the ICC Termination Act issue, albeit in a footnote, but they raised it. They put it before the panel. They raised the issue of whether or not they could be held responsible for the Arctic judgment. They raised that. Did they raise any questions at all about the calculation of the judgment? Comerica never before, if you're referring to the chart that was attached to the appeal, Comerica never before in eight years of litigation ever raised the calculation of damages on an individual driver basis in the district court. The chart was never an issue litigated before, never introduced in the district court, and never litigated in the district court. The district court, when it determined that the $5.5 million figure was an accurate figure, went back to the methodology that was applied in the Arctic litigation and why that figure was an accurate amount. Your Honor, if I could just add one fast error. The calculation was what, $0.09 a mile, and then from that deducted whatever maintenance expenses were taken out of the escrow? No, no. The $0.09 a mile was the calculation of the escrow fund, which in turn was deducted from the gross revenue due to the driver. Okay, but that's the amount that you say was in trust for your client? Yes, and just again, if I might add, the evidence of the accuracy was also put into evidence in the district court on the 2009 summary judgment because there was evidence that the recovery period extended throughout the entire period that the loan was in effect. And we also put in evidence that the lease purchase program, through which the maintenance escrows were collected, terminated in 1997, a year before the loan expired. And so the fact Comerica's not held responsible for Arctic's wrongdoing, but the $5.5 million is equally applicable to the damages here because those escrows that were collected from drivers and transferred to Comerica was exactly coincident to the period that the loan agreement was in effect. And your headlight is on, but if I could ask you one question, what is your best case to say that there was a duty of Comerica to raise the damages issue on the first appeal, whether as an argument or as a cross-appeal? That would be Sanford v. First Baptist. Sanford v. Main Street Baptist Church Manor, and that's 449 Federal Appendix 488. It's an unpublished opinion. It's an unpublished opinion, but it does hold that a prevailing defendant was required, would be prohibited, a prevailing defendant should not be allowed to benefit from reconsideration of an issue on remand when he failed to raise the issue in the first instance on appeal. And also the case quotes language that this court has repeated over and over in previous decisions. It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards to the law of the case than one who has argued and lost. And I would remind the court that- In both those cases, I wondered if the party to which the court refers was the person, the entity, was actually the party. The party being a litigant to the case, either litigant. Okay, I don't see the Sanford case cited in the briefs. I did not cite it in the briefs. Can you give us the state again? But I would also point to all the cases that we cited in our briefs, I think, are solid case law for the mandate rule. Just Sanford again, please. You just gave us the- Yes. Can you just read it again to me so I can write it down? Oh, yes. Sanford v. Main Street Baptist Church Manor, 449 Federal Appendix 488. Thank you. Okay. Your Honor, turning to your question, I wasn't able to answer it in my original opening argument. If you will look at page 8 of our rebuttal brief, starting with Ball v. Abbott, which is 864 F2d 419, which is a Sixth Circuit opinion. Next page on page 9 of our rebuttal brief, Hensley v. Gassman, which is 693 F3d 681, Sixth Circuit 2012. Wheeling v. City of Lansing, 660 F3d 931, Sixth Circuit 2011. All of those cases, Your Honor, are cases saying that we did not have to appeal the damages issue in the first instance. All of the cases that owner-operators cite in their brief are subsequent appeals by the same party. That is not what happened here. Now, I want to turn to owner-operators' contention that the $5.5 million was hotly contested. I have to respectfully disagree. This collusive settlement agreement between ARTIC and the owner-operators, ARTIC officially said in the agreement in writing that, A, we will not challenge the methodology, we will not challenge the damages calculation, and we will support the owner-operators in their claim against Comerica. This was a collusive settlement agreement that Comerica had no party and no interest to, and it cannot be held against us. At the time, you knew they were going to try to enforce it against you, right? I also knew that they still had to prove a claim against us, Your Honor. They had to prove all of the elements of the claim, including the amount of damages against us. Did you raise any objection? At that point in time, we did not. And you were a creditor, right? Not at that time, Your Honor, because our lending relationship at that time had ended. We were no longer a creditor. Wasn't the overview that these monies were supposed to be put into a trust account for the owner-operators, and you were continuing to take money out of that trust account to pay off Arctic's other loans? At the time of the settlement, no, Your Honor. Our relationship had long ended. It passed to Congress Financial, then it passed to Textron. So all of Arctic's assets, all of their money, all their financing went to two different lenders before we were eventually brought in the lawsuit. But in terms of the overall, these escrow monies were being deposited into an account that you were using to pay off Arctic's loan. Actually, accounts receivable from the truck drivers who were driving the runs was deposited in the account. The escrow funds weren't specifically deposited in the account. What happened was that when the owner-operators were paid, the $0.09 per mile was withheld from their paycheck. And deposited in your account. Maintained in the account as an asset for Arctic. What credit or as an account did you use then to pay down the Arctic loans? To go back to the loan mechanics, what happened is when, say, we did a run for Frito-Lay, the owner-operator did a run for Frito-Lay, they would tell us they were doing a run for Frito-Lay, we would give them $0.80 of whatever they were going to get as that run, and then Arctic would use that money whenever they wanted to. When that invoice actually came in and the deposit actually went into the accounts receivable, then Arctic got the additional $0.20. So by the time that the accounts receivable was deposited into our accounts, they already had 100% of that run money for their use, and that's how the loan actually worked. Also, I have to contest owner-operator representation that the prior mandate was a limited mandate. It was the most general mandate this court could possibly write. It said, we affirm in part, reverse in part, and remand to the district court judgment for proceedings consistent with the opinion. And all the statements that the owner-operator said that this circuit court found as a prior opinion are dicta. They are not holdings of this court. This court found three things. One, there was a trust. Two, we were not bonded by a purchaser. And three, there was a question of back as a statute of limitations. That is the holding of this court, nothing more and nothing less. But the paragraph above that says, based upon this record, we agree with the district court that genuine issues of material fact exist which preclude a judgment as a matter of law on Comerica's statute of limitations defense. That is correct, Your Honor, but if you review the Sixth Circuit case law and you review what limited mandates look like, they have to have specific instructions. They have to be direct. They have to be clear and unambiguous. They're not for the district court to guess what the Sixth Circuit meant by its opinion. This was a general remand, and the district court should and could have opened up all factual issues, including the amount of damages that were to be awarded against us. But the only issue the Court of Appeals left open was the statute of limitations, right? I have to disagree, Your Honor, because the procedural posture on the first appeal was a granting of summary judgment. Does that flow through because you never cross-appealed? The Court of Appeals never knew that you were going to later come on and challenge the damage calculation. That's not correct, Your Honor. We didn't cross-appeal because we had won. If every single winner of a summary judgment motion came up and cross-appealed a future damages award, this court's docket would be littered with briefs. If you take it just to a simple employment case, if you win on summary judgment and McDonnell Douglas doesn't apply, you're not going to, as an employer, cross-appeal the amount of future damages that are going to be awarded against an employee. You're going to wait until that damage award is awarded against you and then appeal that award. Well, say there's an adverse finding on statute of limitations, but you get judgment on another issue in your favor. Wouldn't the other side have a duty to, if they believe the statute of limitations was incorrectly decided, to at least take an appeal from the part that would have otherwise killed their case? They only need to appeal under the 630 case law I cited to you and present as argued before this court additional arguments and affirmance of the district court's judgment. That's it. I think your time is up. Anybody to vote for your argument? If it's possible, we can call the next case, please.